UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA


United States of America,  )
                           )
              Plaintiff,   )
                           )
        vs.                )        File No. 1:17-cr-170
                           )
Kevin D. Wanner,           )
                           )
              Defendant.   )



TRANSCRIPT OF CHANGE OF PLEA




Taken at
United States Courthouse
Bismarck, North Dakota
March 13, 2018




BEFORE THE HONORABLE DANIEL L. HOVLAND
-- UNITED STATES DISTRICT COURT JUDGE --

<u>APPEARANCES</u>

    MR. NICHOLAS W. CHASE
    U.S. Attorney's Office
    Quentin N. Burdick United States Courthouse
    655 First Avenue North, Suite 250
    Fargo, North Dakota 58102-4932


                          FOR THE UNITED STATES



              - - - - - - - - -



    MR. JEFFREY S. WEIKUM
    Attorney at Law
    1715 Burnt Boat Drive
    Madison Suite
    Bismarck, North Dakota 58503


                         FOR THE DEFENDANT



              - - - - - - - - -



Certificate of Court Reporter - Page 33



              - - - - - - - - -

1           (The above-entitled matter came before the Court, The
2    Honorable Daniel L. Hovland, United States District Court
3    Judge, presiding, commencing at 11:02 a.m., Tuesday, March 13,
4    2018, in the United States Courthouse, Bismarck, North Dakota.
5    The following proceedings were had and made of record in open
6    court with the defendant present.)
7                    - - - - - - - - - - -
8           THE COURT:  We'll open the record in the case of
9    United States of America versus Kevin Wanner.  Here on behalf
10   of the federal government is Assistant U.S. Attorney Nick
11   Chase.  Representing the defendant here is Attorney Jeff Weikum
12   from Bismarck.  And, Mr. Wanner, how are you today?
13          THE DEFENDANT:  Good.
14          THE COURT:  This is scheduled as a change of plea
15   hearing on counts of mail fraud and money laundering.  There
16   was a written Plea Agreement filed by the parties on
17   December 5, 2017, along with a Plea Agreement Supplement.
18   Mr. Chase, if you could just briefly summarize here on the
19   record what the parties have essentially agreed upon and what's
20   contemplated under the advisory sentencing guidelines from that
21   Plea Agreement.
22          MR. CHASE:  Your Honor, the parties have really -- in
23   the Plea Agreement have only agreed on the base offense level.
24   I'm not sure how much of a disagreement we have on the others.
25          But in paragraph 14 of the Plea Agreement, as the

3

Court can note, that we have listed a number of enhancements
that the United States seeks to prove at the time of
sentencing, included 18 levels because the loss amount is
between 2.5 million, but less than 7 million; a plus-six
because the crime resulted in substantial hardship to more than
25 victims; a plus-two because it was committed using
sophisticated means; another plus-two because the defendant
abused a position of trust; another plus-one because of the
money laundering conviction on top of the fraud conviction; and
a plus-two because the defendant knew one of the victims was a
vulnerable victim.

We don't have an agreement on any of those
enhancements, Your Honor, but, you know, obviously those
enhancements, you know, put the -- put the advisory sentencing
range in the double digits in terms of years.

At the time of sentencing, we also have to resolve
the issue of restitution and forfeiture.

THE COURT:  Well, if there's going to be a need for a
hearing and for me to make some factual findings as to the
sentencing guidelines, then I'll likely want to schedule that
before any date of a sentencing hearing rather than on the date
of.  But I will certainly need to know numbers and names of
witnesses that will be called to address those sentencing
guideline issues.  But what do you anticipate today in terms of
the number of witnesses that you would need to call to --

4

1    relative to these sentencing guideline disputes?

2         MR. CHASE:  I would think that -- I think that for my

3    purposes -- I'm sorry.  Proving the sentencing guidelines, I

4    can likely do it, you know, most of it, if not all of it with

5    Mr. Mathias from the North Dakota Securities Department, with

6    maybe one or two of the victims testifying.  I would expect,

7    you know, at some point, Your Honor, that a number of these

8    victims want to be heard in this case, so -- but if you're

9    talking strictly --

10         THE COURT:  Well, they'd be -- they're entitled to

11   that at the time of the sentencing hearing.

12         MR. CHASE:  Right, but in terms of just calculating

13   the guidelines, I would say one to three witnesses, Your Honor.

14         THE COURT:  All right.  And, Mr. Weikum, anything you

15   wish to add to that summary?

16         MR. WEIKUM:  No, I believe that accurately reflects

17   it, and it's going to -- and I agree with the Court that

18   probably having an earlier hearing may clear up some of the

19   items and expedite the initial sentencing --

20         THE COURT:  Right.

21         MR. WEIKUM:  -- when it happens.

22         THE COURT:  But how many witnesses would you envision

23   that you'd call?

24         MR. WEIKUM:  It is going to be, I would guess, the

25   same number, but depending on who they're calling, once I have

5

1   the identification of which ones out of that, I can probably

2   get that down, but I'm guessing it probably in that two to five

3   range, not -- again, none of them being lengthy, but --

4          THE COURT:  All right.  Well, I would likely look at

5   scheduling that probably a good month before the sentencing

6   hearing.  And my office will reach out to both of you and try

7   to find a date and time that works and try to figure out

8   precisely how much time is needed so they can block that out of

9   my schedule.

10          So, Mr. Wanner, I need to visit with you here on the

11   record today about your intent to plead guilty to these two

12   charges.  Most of what I need to visit with you about are

13   matters that have been addressed in the Plea Agreement, but the

14   law requires we have a hearing in open court and I cover a

15   number of matters with you.

16          If you have any questions as we go through the Plea

17   Agreement this morning, you're free to interrupt me and ask

18   questions.

19          THE DEFENDANT:  No questions.

20          THE COURT:  I don't know anything about you, or --

21   what I know about this case is what's set forth in the Plea

22   Agreement.  As a judge, I have not seen any of the discovery or

23   the evidence, so I'll need to ask you some questions about what

24   was all going on here as well.

25          But in terms of your background, can you tell me just

6

1    a little bit about yourself, how old you are and where you've

2    grown up, gone to school, what your family consists of?

3            THE DEFENDANT:  I was born in 1962 in Dickinson, went

4    to Dickinson Trinity, also attended University of North Dakota.

11:07  5    I started in the brokerage industry in 19 -- I believe 1985.

6            I have a wife, Deb, who's a teacher for about a

7    little over 25 years.  I have a daughter, Ashley, who's

8    graduating from college.  She's going into teaching.  She's 22.

9    I have a son that's 20 that attends the University of North

11:08  10   Dakota.  And I have a daughter that's 18 that goes to St.

11   Mary's.  She's a senior.

12           THE COURT:  And you live in Bismarck now?

13           THE DEFENDANT:  I live in Bismarck, yes, I do.

14           THE COURT:  Okay.  And in the courtroom is your wife?

11:08  15   THE DEFENDANT:  Yes.

16           THE COURT:  Okay.  And your degree from UND was in

17   accounting, or --

18           THE DEFENDANT:  I did business administration --

19           THE COURT:  Okay.

11:08  20   THE DEFENDANT:  -- management.  I have some

21   accounting in there too.  I went and took some accounting

22   courses too.

23           THE COURT:  Any prior criminal history?

24           THE DEFENDANT:  No.

11:08  25   THE COURT:  Any prior issues in your life related to

7

1    the abuse of alcohol or street drugs?

2              THE DEFENDANT:  No.

3              THE COURT:  Ever received any treatment for use of

4    alcohol, street drugs or mental health treatment of any sort?

11:08    5         THE DEFENDANT:  No.

6              THE COURT:  Are you on any --

7              THE DEFENDANT:  Well, I'm sorry, the gambling part of

8    it, I'm getting treatment for gambling.

9              THE COURT:  Okay.

11:09    10        THE DEFENDANT:  I have since -- since January

11   of 2016.

12             THE COURT:  Okay.

13             THE DEFENDANT:  I'm treating for gambling right now.

14   It's been going on for three years, ever since --

11:09    15        THE COURT:  And that's been an issue in your life

16   for --

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  And that's intertwined with these

19   criminal offenses, I assume?

11:09    20        THE DEFENDANT:  Yes.

21             THE COURT:  And, Mr. Weikum, are you retained or

22   appointed in this case, or --

23             MR. WEIKUM:  I'm retained.

24             THE COURT:  Okay.  And, Mr. Wanner, do you feel

11:09    25   you've had sufficient time to review this case and this charge

8

1    with your attorney, Mr. Weikum?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And with respect to the Plea Agreement,

4    do you feel that you had sufficient time to review that with

5    him as well?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you read the Plea Agreement before

8    you signed it?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And you're certainly able to read and

11   understand English well, correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  So in terms of your work in

14   North Dakota since you got out of college, what has that

15   consisted of?

16             THE DEFENDANT:  Mainly through different brokerage

17   firms.

18             THE COURT:  In Bismarck primarily?

19             THE DEFENDANT:  In Dickinson and Mandan-Bismarck,

20   yeah.

21             THE COURT:  And which firms in Bismarck have you

22   worked for?

23             THE DEFENDANT:  Edward Jones, A.G. Edwards.  Well,

24   now I work for -- I have my own business, Precision Financial,

25   which my broker dealer was Woodbury and Questar.

9

1       THE COURT:  So do you have your Series 7 license and

2  all those other series licenses?

3       THE DEFENDANT:  Series 7, 65, yeah, all the ones that

4  -- I can sell stocks and bonds, insurance license.

11:10   5       THE COURT:  All right.  Are you employed now, or you

6  just have your own business now, or what are you doing for

7  work?

8       THE DEFENDANT:  I'm working at Menards right now.

9       THE COURT:  Pardon?

11:11   10       THE DEFENDANT:  I'm working at Menards, night --

11       THE COURT:  Okay.

12       THE DEFENDANT:  -- duty.  I've been battling some

13  health issues, so I was doing -- battling my health during the

14  day and working at night.

11:11   15       THE COURT:  And what are the health issues?

16       THE DEFENDANT:  I have what's called ITP.  It's a

17  blood disorder.  I have it under control now, but -- so it

18  worked better -- it worked for me better doing it at -- working

19  at night and trying to do my treatments during the day.

11:11   20       THE COURT:  So let's review the Plea Agreement here.

21  Do you have a copy there in front of you that you could refer

22  to?

23       THE DEFENDANT:  (Nodding.)

24       THE COURT:  Turning to the last page, which is page

11:11   25  12, is that your signature on the Plea Agreement?

10

1        THE DEFENDANT:  Yes, it is.

2        THE COURT:  And I guess I forgot to ask you, but are

3   you on some form of pretrial supervision now, reporting to a

4   probation officer?

11:11   5        THE DEFENDANT:  No.

6        MR. WEIKUM:  No, he's just on PR release.

7        THE COURT:  Okay.  Paragraph -- if you could turn to

8   paragraph 7, which outlines the maximum penalties for this

9   offense -- these offenses, I should say, Count 1 is a count of

11:12   10  mail fraud.  It carries a maximum of 20 years in federal

11  prison, $250,000 fine, 5 years of supervised release, and a

12  $100 special assessment.

13       Count 2 is a crime entitled money laundering, which

14  carries a 10-year statutory maximum sentence, a maximum fine of

11:12   15  $250,000, 3 years of supervision, and again a $100 special

16  assessment.  Do you have any questions about what the maximum

17  penalties are for these two crimes?

18       THE DEFENDANT:  No.

19       THE COURT:  And in addition to these penalties, I

11:12   20  have the discretion in a criminal case of this nature to order

21  you to pay what's quality restitution for the losses incurred,

22  and you're -- and you understand that you may likely be

23  responsible for paying some amount of restitution too?

24       THE DEFENDANT:  Yes.

11:13   25       THE COURT:  Okay.  Paragraph 8 summarizes what your

11

rights are as a defendant.  Every defendant charged with a
crime in federal court has a right to a jury trial.  That means
that you don't have to plead guilty.  If you wished to contest
this charge, you have the absolute right to do that.

11:13        And if you chose to contest it, then we would have a
trial in this courtroom in front of 12 jurors.  They would
listen to the evidence, and they would decide whether you're
guilty or not guilty of the elements of these two crimes.  Do
you understand that you're entitled to a jury trial?

11:13        THE DEFENDANT:  Yes.

        THE COURT:  And when cases proceed to trial in
federal court, the government, namely Mr. Chase, always has the
burden of proof.  It's the prosecutor who has the burden of
presenting evidence and calling witnesses to prove up these
11:13   charges.  As a defendant you are presumed to be innocent, so
under our Constitution, that means that you don't have to prove
or disprove anything.

        Any evidence and witnesses that the government would
call to testify at trial could be challenged and cross-examined
11:14   by your attorney, but as a defendant you also have a right to
present a case and to present a defense.  You, just like the
government, have a right to call witnesses, and you have a
right to testify.

        But you also have a right to remain silent, which
11:14   essentially means that you can proceed to trial and choose not

1    to testify.  Nobody could ever put you on the stand and

2    question you about what went on here unless you allowed that to

3    occur.  And frequently in criminal cases, defendants choose not

4    to testify for a multitude of reasons, but do you understand

5    all of that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And if this case proceeded to a trial and

8    you were ultimately found guilty of either of these charges by

9    the jury, you have certain rights as well.  You've got a right

10   to appeal any adverse decision of the jury, and you have a

11   right to appeal any sentence that you would be ordered to serve

12   if you were found guilty at a trial.

13           In the federal criminal justice system, year after

14   year the statistics don't change much.  They reveal that

15   generally 95 to 97 percent of criminal cases are resolved by

16   defendants pleading guilty and signing plea agreements, so it's

17   just a small percentage of cases that -- criminal cases that go

18   to trial, but we certainly try a lot of cases in this district.

19           But you've made the conscious decision that you

20   intend to plead guilty to these two charges, is that correct?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you feel that anyone has in some way

23   forced you or threatened you or intimidated you or coerced you

24   to come in here this morning to plead guilty?

25           THE DEFENDANT:  No.

13

1        THE COURT:  Have you been promised anything in

2   exchange for pleading guilty other than what's contained in the

3   Plea Agreement?

4        THE DEFENDANT:  No.

11:16   5        THE COURT:  All right.  Then let's talk about the

6   sentencing guidelines, and they're first addressed in paragraph

7   13.  Sentencing in the federal criminal justice system is

8   largely controlled by the federal sentencing guidelines.  They

9   are contained in this manual that I'm holding up.

11:16   10       The sentencing guidelines have been in existence in

11  the federal criminal justice system since 1987, 30 years.  The

12  sentencing guidelines used to be mandatory, but about 10 or

13  12 years ago that changed, and the United States Supreme Court

14  has now said that the guidelines are no longer mandatory.

11:16   15  They're considered to be advisory.  That simply means that we,

16  as judges, have more discretion in sentencing than what we used

17  to have.

18       But it's crystal clear under the law that before any

19  defendant is sentenced in federal court, myself, as the

11:17   20  sentencing judge, am required to determine what the sentencing

21  guideline range is, so we have to consult this manual.  And

22  both of these attorneys are well versed and as knowledgeable

23  about the sentencing guidelines manual as any -- as any other

24  attorney or judge.

11:17   25       But we really look at two primary factors to

14

1    determine the sentencing guideline range.  One is your criminal

2    history.  There are just six separate criminal history

3    categories recognized in this manual, and VI is the worst.  You

4    don't have a criminal history, so you're going to end up in

11:17    5    Criminal History Category I.

6         The other factor that we need to determine is the

7    base offense level for a crime.  Every crime in the federal

8    system, of which there are thousands, has a certain number

9    that's associated with it.  It's known as the base offense

11:18    10   level for that crime.  Paragraph 7 tells us that the parties

11   have agreed on that as being a seven.  That's in paragraph 13.

12   Do you see that?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Now, with most crimes there's upward

11:18    15   adjustments to that number, whether it's a drug offense or a

16   violent crime or a while-collar crime such as this, and the

17   parties have not agreed on those adjustments.

18        The United States, in paragraph 14, is going to

19   contend that the following adjustments apply, a plus-18.

11:18    20   That's 18 added onto the 7 because they contend the loss amount

21   was more than 2.5 million, but less than 7 million, so I will

22   have to make a factual finding based on the evidence that I'm

23   presented with at this hearing we mentioned earlier as to what

24   the total amount of the loss was.

11:19    25        There's a six-level upward adjustment that the

15

1    government is going to argue applies because the crime resulted

2    in substantial financial hardship to more than 25 victims.

3    Again, that's going to have to be addressed.  I'm going to have

4    to make a finding on that based on evidence that's presented to

11:19    5    me by both attorneys.

6         If the crime was -- if there was some sort of

7    sophisticated means that were used to commit this crime, that

8    would trigger another plus-two upward adjustment.  There's

9    another plus-two upward adjustment if there was abuse of a

11:19    10    position of trust, a plus-one adjustment if there was money

11    laundering involved, and another plus-two upward adjustment if

12    there were vulnerable victims or you knew that one of the

13    victims was a vulnerable victim, so all of those are going to

14    be on the table.

11:19    15         And I want to hold a hearing on that subject at least

16    a month before the sentencing hearing so by the time we get to

17    the sentencing hearing, I will have made a written finding and

18    everybody knows what I have determined to be the applicable

19    sentencing guidelines.  Do you follow me?

11:20    20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  I always encourage the parties to

22    try to agree on what they can agree, and if they disagree on

23    certain upward adjustments on the guideline, then we'll have a

24    hearing, and I'll listen to witnesses, and I do that

11:20    25    frequently.  But if there's some of these adjustments that both

16

1    parties can agree apply, I would urge you to try to work that

2    out between yourselves.

3            And then paragraph 15 tells us that there will be a

4    three-level or a three-point downward adjustment for your

5    acceptance of responsibility and signing a Plea Agreement and

6    pleading guilty.

7            So at the end of the day, after I've heard evidence,

8    I'm going to have to make some factual findings, and I will

9    ultimately have to decide what the guideline range is, what the

10   total offense level is, all of these numbers added up, and what

11   your criminal history category is.

12           If all of these upward adjustments apply, then when

13   you add all of those up as the government contends apply, then

14   we're up to, according to my math, an offense level of 35 and a

15   Criminal History Category I.  And you turn to a sentencing

16   table in the back of this manual, and it tells you what the

17   guideline range is.  Have you seen this chart before?

18           THE DEFENDANT:  Yes.

19           THE COURT:  If you're -- if all of these upward

20   adjustments apply, then we're looking at an advisory sentencing

21   guideline range, if my math is correct, of 168 to 210 months,

22   but it's all -- I mean, the most significant upward adjustment

23   in these types of cases is the total amount of the loss, and so

24   I'm sure that will probably be the critical issue.

25           But, Mr. Weikum, do you have a number that you have

17

determined is more likely than not to be that actual amount of loss?

MR. WEIKUM:  We're still working on that number given kind of the math that was being used both -- by the investigating authorities as well, and so it's a -- it's a floating number, unfortunately, that floats fairly significantly.

THE COURT:  All right.  Now, in addition to the sentencing guidelines, before any defendant is sentenced in federal court, there's some other sentencing factors that I'm required to consider.  Those are all spelled in a -- spelled out in a statute, a federal law.  The citation to the law is 18 United States Code, Section 3553(a).  That law, that statute identifies eight or nine other factors that I'm required to consider.

And Mr. Weikum can make you a copy of that law.  You can look it up on the Internet if you wish.  Just Google in 18 United States Code, Section 3553(a), and it will print out a statute that lists certain factors, such things as your history and characteristics and the nature of this offense, looking at the offense in its entirety, looking at -- I'm required to look at the need to structure a sentence that's going to deter further criminal misconduct and protect the public and ensure that you receive a sentence that's going to give you an opportunity for treatment and training.  And most of them are

18

1   common sense characteristics that really every judge should be
2   looking at before they sentence anybody.
3        And when we get to the sentencing hearing, both
4   attorneys have an opportunity to recommend what they believe is
5   the appropriate sentence based on the sentencing guidelines and
6   these sentencing factors under 18 USC Section 3553(a).  I'm
7   required to listen to what the attorneys present and recommend,
8   but I don't have to adopt and rubber-stamp what any of them
9   say.  Do you understand?
10       THE DEFENDANT:  Yes.
11       THE COURT:  Okay.  And at a sentencing hearing, both
12  sides can present witnesses.  The victims are entitled to
13  testify.  You can certainly call witnesses -- character-type
14  witnesses.
15       You're entitled to submit written materials before
16  the hearing such as letters of support from people that know
17  you well and can speak of your character.  And so both sides
18  can call witnesses and present any written materials that they
19  wish to support their recommendation for a sentence.
20       The statistical data from the United States
21  Sentencing Commission reveals that the majority of sentences
22  that people receive in federal court tend to be sentences that
23  fall within the sentencing guideline range that applies.  But
24  any questions about sentencing issues?
25       THE DEFENDANT:  No.

19

1          THE COURT:  All right.  Then if you could turn next

2     to paragraph 22, it's entitled Defendant's Waiver of Appeal.

3     It's an important paragraph.  It covers the bottom of page 9,

4     all of page 10, and half of page 11.  And waiver of appeal

11:26    5     simply means giving up your right of appeal.  These types of

6     paragraphs are commonly inserted in plea agreements.  In fact,

7     most plea agreements contain a waiver of appeal paragraph.

8          The Courts of Appeals that oversee everything that

9     goes on in a district courtroom like this have nationwide said

11:26   10     that it's permissible to include a waiver of appeal paragraph

11     in a Plea Agreement, so it's done all the time.  It's made a

12     part of the Plea Agreement in an effort to try to put an end to

13     these cases so that we don't have defendants coming back and

14     trying to reopen cases and challenge what has gone on.

11:26   15          And the Courts of Appeals enforce these waiver of

16     appeal paragraphs against defendants who turn around and appeal

17     after they've been sentenced.  The Courts of Appeals nationwide

18     have all said that plea agreements are considered to be

19     contracts, and if you, as a defendant, sign a Plea Agreement,

11:27   20     you have entered into a contract with the federal government,

21     and you're going to be held to its terms just like any other

22     contract that one would sign in life, so in that regard, it's

23     an important paragraph.

24          Paragraph 22 contains a lot of fancy lawyer-like

11:27   25     language and cites to cases and federal laws, but here's

20

basically what it means.  This paragraph requires that before
you are sentenced, I need to determine what the applicable
sentencing guideline range is.

Then the paragraph goes on to say that as long as I
sentence you anywhere within that sentencing guideline range
that's found to apply or anywhere below it, you have agreed
that you will not turn around and appeal or challenge the
sentence in any way.  In other words, you have essentially
agreed that you will live with the sentence that you're ordered
to serve in this case.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  I've been on the Bench since 2002.  I
have never had a defendant that's been successful who's turned
around and appealed one of my sentences because generally
they're sentenced in accordance with plea agreements, and --
and more often than not, every time a defendant signs a Plea
Agreement, they're generally sentenced in accordance with the
terms of that agreement.

This paragraph says that if I ever chose to sentence
you above the sentencing guidelines, you could always appeal
that, but that's rarely done in this country.  In fact, it
happens less than 1 percent of all cases.  And if I ever choose
to sentence a defendant above the guidelines, I need to give
them advanced notice of that, but I'm not going to be
sentencing you above any sentencing guidelines in this case.

21

11:29

1        This paragraph also says that you do not give up any

2    claim that you may have against your attorney if you feel that

3    your attorney has not properly represented you throughout this

4    case.  No defendant can be forced to give up a claim against

5    his or her attorney in a Plea Agreement like this, but do you

6    have any criticisms of the legal assistance and advice that

7    you've received from Mr. Weikum in this case?

8        THE DEFENDANT:  No.

9        THE COURT:  All right.  And you retained him,

11:29

10   correct?

11       THE DEFENDANT:  Yes.

12       THE COURT:  All right.  Finally, let's turn to

13   paragraph 6, which is a rather lengthy paragraph found on pages

14   2, 3 and 4.  Paragraph 6 provides a brief summary of what went

11:30

15   on here and explains why you were charged with these crimes in

16   federal court.

17       Before I can accept a plea of guilty from any

18   defendant, I need to make sure that there are sufficient facts

19   that are contained in the record that would support finding

11:30

20   that defendant guilty of what they've been charged with, so

21   most plea agreements do contain a summary of what occurred in

22   this case, explaining why these charges were brought against

23   you.

24       When you signed the Plea Agreement, you have

11:30

25   acknowledged that you've read it and understand it and you

22

1    agree with what's contained in it.  I simply want to know

2    whether the factual information contained in paragraph 6 of the

3    Plea Agreement as it relates to these two charges and your

4    conduct is a true and accurate, factual summary.

11:30    5    THE DEFENDANT:  Yes.

6    THE COURT:  Are there any factual statements

7    contained in paragraph 6 of the Plea Agreement that you

8    disagree with?

9    THE DEFENDANT:  No.

11:31    10    THE COURT:  Pardon?

11    THE DEFENDANT:  No.

12    THE COURT:  All right.  And all of this is

13    attributable to your gambling problems?

14    THE DEFENDANT:  Yes.

11:31    15    THE COURT:  So tell me how it all came crashing down.

16    How was it all discovered?  When did the investigation start,

17    at least from your awareness of that investigation and when the

18    arrests were made?

19    THE DEFENDANT:  I believe it was December 4th of 2015

11:31    20    that they arrived at my home and broke down my door and came in

21    and started investigating.  And also at the same time they, I

22    guess, went to my office and recovered all my records and --

23    THE COURT:  So there were search warrants and --

24    THE DEFENDANT:  Yes.

11:32    25    THE COURT:  All the computers and documents were

23

1    seized, I assume.

2          THE DEFENDANT:  Right.  They have all my documents

3    and computers and phones and iPads and whatever, yeah.

4          THE COURT:  Okay.  And you've had an opportunity to

5    review the discovery and the investigation and the

6    investigative reports that have been generated?

7          THE DEFENDANT:  Yes.  Yes.

8          THE COURT:  In terms of a factual basis for the plea,

9    Mr. Chase, is there anything more that you feel that you need

10   to add to the record other than what's contained in paragraph

11   6?

12         MR. CHASE:  No, Your Honor.  I think that paragraph 6

13   at least lays out the basis -- the factual basis for both mail

14   fraud and the money laundering.  You know, obviously we have

15   just laid out a few of the mailings to some of the victims.

16   M.B. and C.B., for example, are Mike and Connie Booke.  The

17   T.S. and L.S. that were identified as victims are Terry and

18   Lori Schaaf.  They are just four of many more victims in this

19   case, Your Honor.  They're -- what is charged is, you know,

20   just to hit the elements of the statute, but the scheme is --

21   is much larger.

22         THE COURT:  And what was the scheme essentially from

23   the government's perspective?

24         MR. CHASE:  Your Honor, as we have alleged in the

25   Indictment and I believe during interviews and in court today,

24

Mr. Wanner has acknowledged, Mr. Wanner had a financial

business, Precision Financial Services in the Bismarck area.

At some point around 2000, created what he called an

investment club.  It was the Bears and Bulls Investment Club,

the BBIC.  With this club he solicited existing legitimate

clients in his financial services business to be part of a

special investment club.  He created letterhead, you know, sort

of different information on businesses.  He had a number of

these investment clients who he had in some cases a familial

relationship; in other cases, a longstanding business

relationship with.  Sold what was purportedly CDs, fixed-income

bonds and stocks as part of this investment club.

They were all sham investments.  They didn't exist at

all.  The defendant had created, again, the solicitation

letters, the cover sheets, the account statements of where

their money was invested and what kind of return it was, what

their current balance was on the -- on the principal, tax

documents and account summaries.  All of those documents,

again, completely fictitious that were created by Mr. Wanner to

continue the fraud.

Some of the monies that were paid in by investors

were churned within the investment club as people wanted to

withdraw money.  Some of that money was used to pay off some of

the investors who were withdrawing money.  The vast majority of

the money was retained, spent, used by Mr. Wanner between 2000

1    and 2015, when we executed the search warrants.

2              The money laundering, I think, is laid out.  There's

3    really no other factual basis other than the money that were

4    proceeds in this fraud were used to spend -- or to buy an item

11:36    5    that was over $10,000.

6              THE COURT:  So what is the government going to be

7    contending is the total amount of loss here?

8              MR. CHASE:  Your Honor, it's going to be -- the area,

9    the category is between 2.5 and -- I believe it's either 7 or 9

11:36    10   million, but, Your Honor, we are -- we are going to be taking

11   the position it's going to be over 3 million of intended loss

12   in this case.

13             THE COURT:  All right.  Mr. Weikum, anything you wish

14   to add to the summary or any other facts that you feel you

11:37    15   would need to clarify or explain, or --

16             MR. WEIKUM:  Yeah, the majority of the facts -- for

17   clarification purposes, there were legitimate investments and

18   illegitimate investments running side by side, and so that

19   was -- and at sentencing we can kind of explain a little bit

11:37    20   more regarding the gambling, but other than that, the factual

21   basis is supported.

22             THE COURT:  All right.  Mr. Wanner, anything more you

23   wish to say or add or clarify or explain about what --

24             THE DEFENDANT:  No.

11:37    25             THE COURT:  -- what's alleged in -- or what's set

26

1   forth as facts in paragraph 6?

2           THE DEFENDANT:  No.

3           THE COURT:  All right.  Do you have any questions at

4   all about the charges brought against you in federal court?

11:37     5           THE DEFENDANT:  No, sir.

6           THE COURT:  Okay.  So I'm simply going to ask you how

7   you intend to plead to these two charges.  I can read the

8   charges to you -- to you in their entirety or simply summarize

9   them and ask how you intend to plead, but --

11:38   10           MR. WEIKUM:  We'd request that you summarize.

11           THE COURT:  All right.  You're comfortable with a

12   summary, sir?

13           THE DEFENDANT:  Yes.

14           THE COURT:  All right.  You've been charged in

11:38   15   Count 1 of the Indictment in federal court with a crime that's

16   entitled mail fraud.  As to Count 1, how do you intend to plead

17   this morning, sir, guilty or not guilty?

18           THE DEFENDANT:  Guilty.

19           THE COURT:  You've been charged in Count 2 with money

11:38   20   laundering.  As to Count 2, how do you intend to plead this

21   morning?

22           THE DEFENDANT:  Guilty.

23           THE COURT:  The Court accepts your pleas of guilty to

24   Counts 1 and 2.  I find, Mr. Wanner, that you are a competent

11:38   25   man who understands what he's been charged with in federal

court and what the consequences are for pleading guilty to
these charges.  I find that you've entered knowing and
voluntary pleas.  I also find there are sufficient facts that
you have agreed to in paragraph 6 of the Plea Agreement that
support finding you guilty of these offenses, so in accordance
with Rule 11, I accept your pleas of guilty this morning.

What happens next in all criminal cases in federal
court is that after a defendant has been -- pled guilty or
found guilty by a jury, before sentencing occurs, we have a
report prepared called a presentence investigation report.
It's done in every case.  It's primarily used for sentencing
purposes, and it's a report prepared by a federal probation
officer.

The officer in this case is Carly Dalbey.  She's from
Fargo.  She's a federal probation officer there, and she will
need to interview you, and she'll likely set that up within the
next two to three weeks, I would guess.  She will get in touch
with Mr. Weikum and coordinate that interview and setting it up
through him because your attorney has a right to be there.

These are not police interrogations or anything even
close to it.  The purpose of the interview is really to gather
background, factual information from you, because included in
the report is information about your background, your family,
education, work experience, criminal history, etcetera.  She
will probably contact your wife by phone as well to confirm

28

certain of that information.

And also included in the report is a lengthy discussion about the sentencing guidelines.  The probation officer goes through the evidence, and she will calculate what she believes is the appropriate sentencing guidelines.

And then the report is sent out to both attorneys, and if -- and your attorney will get you a copy of the report probably within about two months.  And everybody is given a chance to read that report over to make sure that it's accurate, so please read it over carefully.  You can have your wife read it as well.

If you notice any errors in the report, it's important that you let Mr. Weikum know what you think is wrong in the report, and he'll follow up and contact the probation officer that wrote it.  We want these reports to be accurate, so we give everybody a chance to look it over.  And I don't see those reports until long after you've seen it.  I see it after it's been finalized.

But included, as I mentioned, in the report is the sentencing guideline calculations.  And if the attorneys disagree with those preliminary calculations, there's an opportunity under the rules for them to voice those objections and present their arguments to the probation officer that wrote the report about what they believe should be the sentencing guidelines that apply.

29

1    If there's still a disagreement about the guidelines

2    after that report has been sent out to everybody, that's when

3    we'll have a hearing, if need be, to listen to witnesses.

4    Ultimately if there's some dispute about the sentencing

11:42   5    guidelines, I'm left with the responsibility of hearing

6    evidence and making a factual finding as to what I believe are

7    the appropriate guidelines.

8    The sentencing hearing in this case is scheduled for

9    Monday, June 18th, at 11 o'clock.  There's probably going to be

11:42   10   a need for more time than an hour, but I guess I'll leave it up

11   to counsel to let me know about that.

12   And my office will reach out to both attorneys here

13   and look at scheduling a earlier sentencing hearing to address

14   guideline disputes, which would likely be sometime in early

11:42   15   May, I would guess.  Any questions?

16   THE DEFENDANT:  No, sir.

17   THE COURT:  And at sentencing hearings in federal

18   court, everybody gets a chance to speak.  Both attorneys are

19   given an opportunity to outline what their recommendations are.

11:43   20   I'm required to give you a chance to speak.  I'm required to

21   give victims a chance to speak and anyone else that wishes to

22   state anything for the record as to a sentence.

23   I always encourage defendants to submit letters of

24   support from people that know them well.  I read those letters

11:43   25   carefully.  Letters to judges usually tell me more about the

30

1   person that I'm -- have the responsibility to sentence than

2   what I'm going to read in a presentence investigation report,

3   so I encourage you to think about letters.  Visit with

4   Mr. Weikum about that.  He's been around a long time.  He knows

11:43   5   what kind of information judges are interested in hearing.

6           And information that I look at carefully is -- in

7   letters is information about your character and your work ethic

8   and your -- what kind of a father you've been, what kind of a

9   spouse that you've been.  I'm not going to read those things in

11:44   10  a presentence investigation report.  And I appreciate knowing

11  something more about your background than the cold, hard facts

12  that I'm going to read in a report.

13          So if you do intend to submit any letters, all that I

14  ask from anyone is that they get those to their attorney at

11:44   15  least a week or two before any sentencing hearing so that the

16  letters can get properly filed and I have a chance to read

17  them.  I usually read those letters over a couple of times.

18          But almost every week it seems like some defendant

19  comes to a sentencing hearing, and even though I've told them

11:45   20  to get letters filed beforehand, they'll come with a stack of

21  letters, and they want me to read them before sentencing.  And

22  I'll take the time to read them, but it's not very fair to me,

23  nor is it fair to that defendant that I'm left in a position of

24  scurrying through and reading a bunch of letters of support

11:45   25  five minutes before a sentencing hearing.  I'll take the time

31

1    to read them, but I would prefer to have some time to also

2    think about them.

3              Any questions or concerns?

4              THE DEFENDANT:  No.

5              THE COURT:  Anything else that I've overlooked here

6    counsel?

7              MR. CHASE:  No, Your Honor.

8              MR. WEIKUM:  No, Your Honor.

9              THE COURT:  All right.  Thank you, and we will stand

10   adjourned.

11             (Proceedings concluded at 11:45 a.m., the same day.)

12                   - - - - - - - - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF COURT REPORTER</u>

2          I, Sandra E. Ehrmantraut, a Certified Realtime

3    Reporter,

4          DO HEREBY CERTIFY that I recorded in shorthand the

5    foregoing proceedings had and made of record at the time and

6    place hereinbefore indicated.

7          I DO HEREBY FURTHER CERTIFY that the foregoing

8    typewritten pages contain an accurate transcript of my

9    shorthand notes then and there taken.

10         Dated:  September 6, 2019

11

12                         <u>/s/ Sandra E. Ehrmantraut  </u>
                           Certified Realtime Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25